# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 1129 | **DATE** | 11/21/2000 |
| **CASE TITLE** | In Re: GENERAL INSTRUMENT CORPORATION SECURITIES LITIGATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ■ Status hearing set for 6 Dec. 00 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to_____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion for partial summary judgment as to plaintiffs' fourth, fifth, seventh, ninth, and tenth claims for relief is granted in part and denied in part. The Court grants summary judgment in favor of defendants as to all of plaintiffs' derivative claims. Summary judgment is also granted in favor of General Instrument Corp., Daniel Akerson, and Charles Dickson with respect to their individual breach of fiduciary claims. Summary judgment as to the individual breach of fiduciary duty claim against Richard Friedland is denied. Defendants' motion to strike portions of Stuart Zimmerman's Declaration and motion to strike portions of plaintiffs' statement of undisputed material facts are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 22 2000 date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 401 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 NOV 21 PM 2:51 | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: GENERAL INSTRUMENT CORPORATION SECURITIES LITIGATION | Master File No. 96 C 1129 |
| THIS DOCUMENT RELATES TO: BKP PARTNERS, et. al. | Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are three securities actions, all brought against General Instrument Corp. and several of its directors and officers, which have been consolidated for coordinated pretrial proceedings pursuant to the Order of the Judicial Panel for Multi-District Litigation. This memorandum opinion and order addresses the action brought by some of the former shareholders of Next Level Communications concerning the events surrounding the merger between General Instrument Corp. and Next Level Communications. Defendants seek partial summary judgment pursuant to FED. R. CIV. P. 25(c) with respect to plaintiffs' Fourth, Fifth, Seventh, Ninth and Tenth claims for relief.

### BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions. The individual plaintiffs in this case are former shareholders of a California corporation, Next Level Communications ("Next Level"). In early 1995, General Instrument Corp. ("GI") entered into a Stock Purchase Agreement with Next

Level whereby GI purchased approximately 10% of Next Level's outstanding stock. (Pltf. Stmt. ¶ 4). The Agreement also granted GI an option to acquire all outstanding Next Level stock. (*Id.*) On May 1995, defendant Richard Friedland became a member of Next Level's Board of Directors. (*Id.* at ¶ 5). At the time of his appointment to the Board, Friedland also served as President and Chief Operating Officer of GI. (*Id.* at ¶ 1).

In June of 1995, after Next Level met certain technical milestones, GI entered into merger negotiations. (*Id.* at ¶ 13). Friedland was the lead negotiator for GI. (*Id.*) In July 1995, GI entered into a letter of intent and in August 1995, GI and Next Level signed the Agreement and Plan of Merger ("Merger Agreement"). (*Id.* at ¶¶ 14, 16).

Pursuant to the Merger Agreement, GI was obligated to advise promptly Next Level of any material facts that it became aware of during the pendency of the merger transaction not previously disclosed or that made prior statements by GI misleading. (*Id.* at ¶ 17). The Merger Agreement also structured the merger as a stock-for-stock exchange, ultimately resulting in the exchange by Next Level shareholders of 11,967,000 outstanding shares of Next Level for 2,525,037 shares of GI. (*Id.* at ¶¶ 18, 64). Each share of outstanding Next Level common stock and Series A preferred stock was valued for purposes of the merger at $7 per share. (*Id.* at ¶ 64). Each GI common stock was valued at the average closing

price determined over a ten-day measuring period, beginning September 11, 1995 and ending September 22, 1995. (*Id.* at ¶ 20).

The plaintiffs submit, however, that the price of GI stock was artificially inflated during the valuation period as a result of defendants' misrepresentations and failure to disclose material adverse information about GI's business. (*Id.* at ¶ 65). Plaintiffs' retained expert opines that as a result of the misrepresentations and undisclosed information, the price of GI stock was inflated by as much as $8.35 per share. (*Id.*)

## DISCUSSION

Summary judgment shall be granted if the pleadings along with the supporting documents "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir. 1990). However, a party opposing a properly supported motion for summary judgment cannot rest upon mere allegations or denials of his pleading, but must present affirmative evidence in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Derivative Damages**

Defendants first seek to foreclose all of plaintiffs' derivative claims on grounds that the plaintiffs cannot to meet their burden on damages with any competent proof. The Court agrees.

Since plaintiffs' derivative action is based on state law claims, the parties are in agreement that California law governs. In California, it is well settled that the gravamen of a derivative action "is injury to the corporation or to the whole body of its stock," as distinguished from injury to individual shareholders. *Jones v. Ahmanson & Co.*, 460 P.2d 464, 470 (Cal. 1969)(internal quotes omitted, citation omitted). In support of their damages element, plaintiffs offer only the declaration of Stuart Zimmerman, a named plaintiff and a former member of Next Level's Board of Directors. Zimmerman attests that damages to Next Level stock as a result of defendants' actions can be calculated by taking the per share inflation figure of GI stock submitted by Dr. Blaine Nye, the plaintiffs' individual damages expert, and multiplying that figure by the total number of GI shares that were given in exchange for Next Level stock in the merger. (Zimmerman Decl. ¶ 8). Therefore, multiplying the $8.35 per share inflation figure to the 2,247,287

shares of GI that were received by Next Level shareholders, Zimmerman concludes that damage to Next Level stock amounts to $18,764,846. (*Id.*) Zimmerman also states that "there were discussions in late 1994 and 1995 concerning the possibility of a joint development deal between Scientific Atlanta [a competitor of GI] and/or the acquisition of an interest in Next Level." (*Id.* at ¶ 3). Relying upon these statements, plaintiffs argue that they have set forth sufficient evidence of derivative injury to Next Level; specifically, injury to Next Level's "whole body of stock" as well as lost corporate opportunity. (Pltf. Resp. at 10-12).

But neither of Zimmerman's suggested theory of damages are sufficient to raise a genuine issue of material fact. When a party opposes a motion for summary judgment with affidavits, that party may not rely upon any statements in such affidavits that are otherwise inadmissible in evidence. *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999). Rule 56(e) reads: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." However, nothing in Zimmerman's declaration affirmatively assured this Court that his statements about Next Level's injuries are within his personal knowledge or are otherwise admissible as evidence.

Zimmerman's conclusion that Next Level's damages may be calculated by simply aggregating another experts' individual damage figure is pure speculation and runs afoul of Federal Rules of Evidence 701. *Stagman*, 176 F.3d at 995 ("statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory" do not meet the requirement of Rule 56(e)). Federal evidentiary rules permit lay opinion testimony as to ultimate issues of fact, but only when the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." FED. R. EVID. 701. The requirement that the opinion be based on the witness's perception is "the familiar requirement of first-hand knowledge or observation." FED. R. EVID. 701(a) Advisory Committee Note; *Stagman*, 176 F.3d at 996. However, when in order to express an opinion, the witness draws upon some specialized skill or proposition learned outside of his experiences with the immediate parties and issues in the case, the witness must be disclosed and qualified as an expert in accordance with FED. R. CIV. P. 26(b)(4) and Rule 702. *Treat Brothers Co. v. Fidelity and Deposit Co. of Maryland*, 986 F.2d 1110, 1118 n.8 (7th Cir. 1993); *see also, Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp.2d 786, 791 (N.D. Ill. 2000)("where, in order to express an opinion, the witness must possess some experience or expertise beyond that of

the average, randomly selected adult, it is a Rule 702 opinion and not a Rule 701 lay opinion.")(internal quote omitted, citation omitted).

Zimmerman's damage opinion primarily relies upon the work of plaintiffs' individual damages expert rather than Zimmerman's own experience with Next Level and GI. Citing case law from sister jurisdictions, plaintiffs insist that lay opinion based on data generated by third parties does not present a problem with Rule 701. (Pltf.'s Opp. Strike at 5-6). But plaintiffs' citations do not support such a proposition. In *Allbritton v. Colonial Life & Accident Ins. Co.*, No. 3-98-CV-0645-BD(R), 2000 WL 769225, at *6 (June 13, 2000) the Northern District of Texas found that plaintiffs' own estimates of future lost income was admissible under Rule 701. Contrary to plaintiffs' representations, the *Allbritton* court was explicitly concerned about the fact that in calculating the damage figure, plaintiff relied upon the Consumer Price Index for inflationary data. "Clearly, such extraneous evidence was not within Barnette's personal knowledge, and he was not qualified to offer an opinion based on it." *Id*. Nevertheless, the court admitted the damage figure because defendants' own documents corroborated plaintiffs' figure. *Id*.

Likewise, in *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3rd Cir. 1993), the Third Circuit admitted lay testimony as to damages under Rule 701. Although the lay witness relied upon

data generated by a third party, the court held such reliance did not violate Rule 701 because the witness actually participated in the generation of that data and had other personal experiences that would have brought first-hand knowledge of the facts underlying the data. *Id.*

In this case, plaintiffs do not point to any evidence that the data generated by Dr. Nye is uncontroversial, or that Zimmerman was personally involved in generating the data or has first-hand knowledge of the information underlying the data. As such, Zimmerman's testimony is not proper lay opinion testimony pursuant to Rule 701 and cannot be considered in opposition to defendants' motion for summary judgment.

Even if the Court were to conclude that Zimmerman's reliance upon Dr. Nye's report was not objectionable, his opinion must still be excluded since it improperly strays into the area of expert testimony. Plaintiffs contend that since the damage calculation involves nothing more than a simple act of multiplication, Zimmerman need not be qualified as an expert to opine as to a final damage figure. But that merely begs the question: how did Zimmerman come to the conclusion that Next Level could be fully compensated by simply aggregating all the individual damages? The defendants disagree that derivative damages in this case could be so obvious, (Def. Reply at 5), and plaintiffs have not provided this Court with a shred of evidence or argument to suggest

otherwise. The Court finds it simply incredible that if Dr. Nye's work on individual damages could be so easily converted into an opinion on corporate damages that Dr. Nye himself was not urged to make that conclusion and avoid this strange spectacle of a lay witness opining as to damages in a securities case. In any event, without any indication that the proper measure of damages in this case is as obvious as the plaintiffs would have the Court believe, the Court must conclude that Zimmerman relied upon some specialized knowledge gained outside of his immediate experience with Next Level and GI to render his opinion. As such, Zimmerman should have been disclosed and qualified as an expert and his testimony cannot be smuggled in under the guise of lay opinion.

Plaintiffs' only other possible theory of derivative injury is lost corporate opportunity. Again, plaintiffs rely solely upon Zimmerman's declaration as evidence, which states that Scientific Atlanta (a competitor of GI) and Next Level were engaged in discussions in late 1994 and 1995 in a possible joint development deal. (Pltf. Resp. at 12). However, when GI and Next Level signed a letter of intent in July 1995 with GI, Next Level was prohibited from engaging in any further discussions with third parties. Therefore, by withholding material information at the time the parties entered into the letter of intent, GI deprived Next Level of the corporate opportunity to enter into a "potentially more lucrative merger" with Scientific Atlanta. (*Id.*)

- 9 -

Plaintiffs' argument must be rejected as pure conjecture. First, plaintiffs give no indication that the "discussions" would have lead to at least a tangible expectancy, rather than mere hope, in a deal with Scientific Atlanta. *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1392 (9th Cir. 1997)(California corporate opportunity doctrine prohibits a fiduciary from acquiring in opposition to a corporation property which the corporation has an "interest or tangible expectancy"). To the contrary, plaintiffs' own submissions confirm that by February 1995 - long before the advent of any of the alleged wrongful conduct that could have lead to the usurpation - GI was granted a 10% stake in Next Level with an option to acquire the rest of the company at a price of not less than $7 per share. (Pltf. Appendix Ex. 2 at GI0020623). Next Level's grant of an option to GI in January 1995 thus undercuts any inference that a deal with Scientific Atlanta was tangible at the time the parties signed the letter of intent.

Second, the assertion that any supposed deal with Scientific Atlanta was "more lucrative" than what they were offered in the GI merger rests on nothing but bare pleading. Plaintiffs do not set forth even a hint as to how much a deal with Scientific Atlanta would have been worth, let alone showing that such a deal would have been worth more than GI's option to acquire Next Level at no less than $7 per share. In sum, since plaintiffs have utterly failed to make a showing as to the existence of an injury to Next

Level itself – an element for which plaintiffs bear the burden of proof – the Court has no choice but to grant summary judgment on behalf of the defendants as to plaintiffs' derivative claims. *Celotex Corp.*, 477 U.S. at 322.

### Fiduciary Duties

Defendants next seek to dismiss plaintiffs' breach of fiduciary claims. Plaintiffs brought breach of fiduciary claims as to GI and individual defendants Richard Friedland, Daniel Akerson, and Charles Dickson. These breach of fiduciary claims were brought both derivatively and individually. However, since the Court has already dismissed all derivative claims for lack of derivative injury, the Court need only consider plaintiffs' allegations of breach of fiduciary duties to the individual plaintiffs.

Plaintiffs claim that GI, as owner of a 10% stake in Next Level, was a controlling or dominant shareholder at the time of the merger negotiations. Therefore, GI owed other shareholders the duty of a fiduciary with respect to the merger negotiations, which they breached. "Dominant" or "controlling" shareholders have "fiduciary responsibilities to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner." *Jones v. H.F. Ahmanson & Co.*, 460 P.2d 464, 471 (Cal. 1969). In *Jones*, being a dominant or controlling shareholder was synonymous with being a majority shareholder. *Id.*

In this case, GI, with only 10% of Next Level shares, was not a majority shareholder with control of the corporation. Furthermore, Plaintiffs do not cite to any authority suggesting that a minority shareholder could otherwise be considered a "dominating" or "controlling" shareholder. Even if such was the state of the law, plaintiffs present no evidence that GI had any ability actually to control or dominate Next Level. Plaintiffs make a point of emphasizing that when GI purchased the 10% stake, it also had in hand an option to acquire the rest of the company. But plaintiffs fail to enlighten the Court as to how the option turns a mere 10% stake into a controlling stake.

Plaintiffs also suggest that GI was a fiduciary because plaintiffs reposed trust and confidence in GI to disclose all material facts in connection with the merger. (Pltf. Opp. at 15). But a unilateral act of trust does not create a fiduciary relationship. A fiduciary relationship is created when a party reposes trust and confidence in another, and the party in whom such confidence is reposed accepts or assumes the confidence, *i.e.*, takes control over the other person's affairs. *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 99 Cal. Rptr.2d 665, 670 (Cal. App. Ct. 2000); *Lynch v. Cruttenden & Co.*, 22 Cal. Rptr.2d 636, 640 (Cal. App. Ct. 1993). Plaintiffs submit no evidence that GI ever agreed to or assumed control over the shareholders' affairs with respect to the merger. Accordingly, the

Court must conclude that GI did not occupy the position of a fiduciary with respect to the plaintiff shareholders.

Richard Friedland, on the other hand, as a member of Next Level's Board of Directors, did occupy the position of a fiduciary to Next Level shareholders. A director owes fiduciary duties to the shareholders of the corporation he serves. *Jones*, 460 P.2d at 471 (citing *Remillard Brick co. v. Remillard-Dandini*, 241 P.2d 66, 75 (Cal. Ct. App. 1952). Defendants' sole grounds for summary judgment here is that the Stock Purchase Agreement, by which GI obtained 10% of Next Level shares and allowed GI to place Friedland on the Next Level Board, prevented Friedland from discussing GI with Next Level or its shareholders. Therefore, even if Friedland failed disclose GI's adverse business information during the merger negotiations, Friedland had no obligation to. But this argument is wholly without merit.

First, nothing in the Stock Purchase Agreement supports defendants' position that Next Level shareholders waived their rights to expect Friedland to honor his fiduciary obligations. Rather, the Purchase Agreement merely sought to prevent conflicts of interest by restricting Friedland's ability to access Next Level's confidential and proprietary information and limit his influence over Board "discussions and decisions involving GI." (Def. Stmt. ¶ 45). Certainly such benign conflict-of-interest provisions cannot reasonably be read to prevent Friedland from

alerting Next Level as to GI conduct that potentially violate the Merger Agreement and securities laws.

Besides, any prohibition on Friedland's participation in Board "discussions involving GI" was anything but absolute. The Purchase Agreement explicitly grants the Next Level Board discretion to invite the GI representative to participate in GI matters. (Def. Stmt. ¶ 45). The evidence submitted by the parties suggests that is precisely what the Board did. (Pltf. Stmt. ¶ 13, Zimmerman Decl. ¶ 6). As such, summary judgment with respect to defendant Friedland is premature.

Finally, in response to defendants' motion for summary judgment, plaintiffs concede that the remaining individual defendants, Daniel Ackerson and Charles Dickson are not fiduciaries with respect to Next Level shareholders. Nevertheless, plaintiffs contend that Ackerson, Dickson, as well as GI itself, may be held liable as aiders and abettors to Friedland's breach.

California courts recognize a cause of action against third parties for aiding and abetting breach of fiduciary duties if such third parties actively participate in the breach in furtherance of their own pecuniary advantage. *Heckman v. Abramson*, 168 Cal.App.23d 119, 127 (1985); *Pierce v. Lyman*, 3 Cal. Rptr.2d 236, 242 (Cal. Ct. App. 1991). But plaintiffs fail to cite to anything in the record to support their assertion that these defendants actively participated in Friedland's breach. (Pltf. Resp. at 16).

As to defendant Dickson, plaintiffs even fail to point to any evidence of personal pecuniary gain as a result of Friedland's breach. Consequently, summary judgement with respect to aider and abettor claims must be granted in favor of the defendants.

**Motions to Strike**

Accompanying defendants' motion for summary judgment are two motions seeking to strike portions of plaintiffs' fact submissions. The choice to outright strike or simply ignore submissions that are not suitable for consideration on a motion for summary judgment is committed to the sound discretion of the district court. *Maldano v. U.S. Bank*, 186 F.3d 759, 768-69 (7th Cir. 1999). In deliberating upon defendants' motion for summary judgment, the Court has taken into consideration only those factual submissions that are relevant to the issue at hand and are in compliance with the rules of civil procedure, evidence, and local procedure. Those submissions that were not in compliance or were otherwise irrelevant to the determination of the issues, the Court ignored. Accordingly, the Court finds it unnecessary at this time to parse through each and every submission to make independent findings as to whether some ought to be formally striken from the record. Accordingly, defendants' motions to strike are denied as moot.

## CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment as to plaintiffs' fourth, fifth, seventh, ninth,

and tenth claims for relief is granted in part and denied in part. The Court grants summary judgment in favor of defendants as to all of plaintiffs' derivative claims. Summary judgment is also granted in favor of General Instrument Corp., Daniel Akerson, and Charles Dickson with respect to their individual breach of fiduciary claims. Summary judgment as to the individual breach of fiduciary duty claim against Richard Friedland is denied. Defendants' motion to strike portions of Stuart Zimmerman's Declaration and motion to strike portions of plaintiffs' statement of undisputed material facts are denied as moot.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: November 21, 2000